## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-20454-CIV-ALTONAGA

**DARYEL BUESKING**,

  Plaintiff,

v.

**ALOSCHI BROS. SRL.**, *et al.*,

  Defendants.

_____/

**DARYEL BUESKING**,

v.

  Garnisher,

**CARNIVAL CORPORATION**, *et al.*,

  Garnishees.

_____/

### <u>ORDER</u>

  **THIS CAUSE** came before the Court on Garnishees, Carnival Corporation ("Carnival"); Royal Caribbean Cruises Ltd. ("Royal Caribbean"); and Celebrity Cruises, Inc.'s ("Celebrity['s]") Motion to Vacate Plaintiff's Rule B Attachments and Garnishments [ECF No. 48], filed on June 20, 2025.  Plaintiff, Daryel Buesking filed a Response [ECF No. 59]; to which Garnishees filed a Reply [ECF No. 70].  The Court has considered the record, the parties' written submissions, and applicable law.  For the following reasons, the Motion is denied.

### I.  BACKGROUND

  Plaintiff was a passenger on a ferry operated by Italian Defendants, SNAV S.P.A. ("SNAV") and Aloschi Bros. SRL. ("Aloschi").  (*See* Compl. [ECF No. 1] ¶¶ 7–8, 13, 15–17, 20). While traveling on the ferry from Naples, Italy to Capri, Italy, Plaintiff allegedly tripped and fell

over an unmarked obstacle, sustaining a catastrophic spinal-cord injury.  (*See id.* ¶¶ 14, 17).

Plaintiff filed two lawsuits seeking compensation for the injuries.  First, on June 12, 2024, Plaintiff sued Aloschi, SNAV, and Princess Cruise Line, Ltd. ("Princess") in the Central District of California, invoking *quasi in rem* jurisdiction under Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Admiralty Rules").  *See generally Buesking v. Princess Cruise Lines, Ltd.*, No. 24-cv-04935, Compl. [ECF No. 1] filed June 12, 2024 (C.D. Cal. 2025) 14, 16.[1, 2]  Plaintiff served summonses and processes of maritime attachments and garnishments on Princess, Carnival, Royal Caribbean, Celebrity, and two other entities.  *See generally Buesking*, No. 24-cv-04935, Returns of Service [ECF Nos. 47–48, 51–56], filed Nov. 18, 2024.  In December 2024, Plaintiff dismissed all garnishees other than Princess.  *See generally Buesking*, No. 24-cv-04935, Notices of Dismissal [ECF Nos. 76, 82], filed Dec. 3, 2024 and Dec. 13, 2024.

Next, on January 30, 2025, Plaintiff initiated this lawsuit, asserting four claims against Defendants: two seeking *quasi in rem* attachments and garnishments under Admiralty Rule B ("Counts I–II") (*see* Compl. ¶¶ 22–33); a negligence claim ("Count III") (*see id.* ¶¶ 34–37); and a negligent-failure-to-warn claim ("Count IV") (*see id.* ¶¶ 38–42).  On March 14, 2025, Plaintiff served Summonses and Processes of Maritime Attachment and Garnishment ("Attachments") [ECF Nos. 8–9] on Garnishees.  (*See generally* Process Receipts and Returns [ECF Nos. 21, 33–34]).

---

[1] Plaintiff also attempted to sue "XYZ Corporation(s)," meant to represent the unknown owners of the excursion on which Plaintiff was injured.

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

In the Motion, Garnishees seek vacatur of the Attachments on legal and equitable grounds, arguing that the attached property is located outside the Southern District of Florida and the proper forum for this dispute is either Italy or California. (*See* Mot. 3).[3]  Plaintiff contends Garnishees lack standing to contest the Attachments, the Attachments are proper under the Admiralty Rules, and equity does not require vacatur. (*See generally* Resp.).

## II. LEGAL STANDARDS

Admiralty Rule B ("Rule B") allows a plaintiff to seek attachment of a defendant's property when the defendant cannot be found within the district where suit is filed, and the property is held by garnishees that can be found within the district. *See* Fed. R. Civ. P. Adm. Supp. R. B(1)(a). Under Admiralty Rule E(4)(f) ("Rule E"), "[w]henever property is arrested or attached, any person claiming an interest in it" can challenge the validity of an attachment and is entitled to a hearing. *Id.* (alteration added); *see also Zambrano v. Vivir Seguros, C.A.*, No. 16-cv-22707, 2017 WL 347078, at *2 (S.D. Fla. Jan. 24, 2017) (citation omitted).

At a Rule E hearing, the plaintiff has the burden to prove there were reasonable grounds for issuing the attachments. *See Dannebrog Rederi AS v. M/Y True Dream*, 146 F. Supp. 2d 1307, 1311 (S.D. Fla. 2001) (citation omitted).  The court must "focus on the facts known at the time of the attachment[,]" *id.* (alteration added; citation omitted); and view the evidence in the light most favorable to the party whose property is attached, *see Unitas Finance Ltd. v. Di Gregorio Navegacao, Ltda.*, No. 99-1233-Civ, 1999 WL 33116415, at *1 (D.N.J. Nov. 8, 1999) (citation omitted).

Once a plaintiff establishes that issuance of the attachments was reasonable under Admiralty Rule B, an interested party may establish any equitable grounds for vacatur. *See*

---

[3] Initially, Garnishees also argued that Plaintiff has other adequate security for his claims. (*See* Mot. 8–9). They withdrew this argument after considering Plaintiff's Response. (*See* Reply 3 n.1).

3

*Zambrano*, 2017 WL 347078, at *2 (citation omitted).  As courts have held, equitable vacatur is appropriate when (1) the defendant is subject to suit in a convenient adjacent jurisdiction; (2) the plaintiff could obtain personal jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has obtained sufficient security for the potential judgment.  *See Zambrano*, 2017 WL 347078, at *2 (quoting *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 444 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009); other citation omitted).

### III.  DISCUSSION

The Court begins with the threshold issue of whether Garnishees have standing to contest the Attachments under Rule E.

### A.  **Standing**

Plaintiff argues that Garnishees cannot properly invoke Rule E because they do not have "an interest in" the attached funds, which belong to Aloschi; and the funds have not yet been "arrested or attached[.]"  (Resp. 6–7 (quoting Rule E; alteration added; emphasis omitted)).  Garnishees maintain they have an interest in the funds because they hold them, and the funds "directly affect their ability to conduct business with Aloschi."  (Reply 3).  They also contend the Attachments were effective upon service.  (*See id.* 4–5).  On this issue, Garnishees have the better arguments.

As to effectiveness, Plaintiff maintains that the Attachments are not operative because Garnishees have yet to file answers stating the amounts attached and are "actively disregarding" the Attachments by refusing to comply with discovery obligations.  (Resp. 7 (citing *id.*, Exs. 1–3, Garnishees' Disc. Resps. [ECF Nos. 59-1–3] ¶¶ 2, 3, 8)); *see also* Rule E(4)(f) (requiring that property be "arrested or attached" before an interested party may challenge attachment).  Yet Rule

B attachments "must either attach property on the date of service or be void." *Union Planters Nat. Bank v. World Energy Sys. Assocs.*, 816 F.2d 1092, 1098 (6th Cir. 1987) (citation omitted); (*see also* Attachments 1–2 (commanding Garnishees to attach Defendants' property)). Certainly, Plaintiff does not argue the Attachments are void. (*See generally* Resp.). Thus, the Attachments became effective on March 14, 2025 — the date of service — regardless of whether Garnishees have complied with post-service deadlines.

Because the Attachments are effective, Garnishees may invoke Rule E — despite owing the attached funds to Aloschi. (*See* Resp. 6). To seek relief under Rule E, a party need only "*claim*[] an interest in" attached property. Rule E(4)(f) (emphasis and alteration added). Garnishees claim an interest in the attached funds, which they hold and control. (*See* Mot. 5; Reply 3–4). This suffices to satisfy the undemanding requirements of Rule E. *See Preble-Rish Haiti, S.A. v. Republic of Haiti*, 558 F. Supp. 3d 430, 434 (S.D. Tex. 2021) ("[A] garnishee . . . has standing to challenge the validity of the attachment of property in its hands[.]" (alterations added; citation omitted)); *see also Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Ltd.*, No. 4:22-CV-1983, 2022 WL 18932063, at *8 (S.D. Tex. Nov. 2, 2022) (considering the merits of a garnishee's request for equitable vacatur); *c.f. Agrocooperative Ltd. v. Sonangol Shipping Angola (Luanda) Limitada*, No. Civ-14-1707, 2015 WL 138114, at *7 (S.D. Tex. Jan. 8, 2015) (concluding garnishees lacked standing because plaintiff had "not identified any specific property in the hands of or subject to the control of [g]arnishees that belongs to [d]efendants" (alterations added; footnote call number omitted)).

### B. **Rule B's Requirements**

To meet his burden of showing that reasonable grounds existed to issue the Attachments, Plaintiff must prove: (1) he has a valid prima facie claim, cognizable in admiralty, against

Defendants; (2) Defendants cannot be found within the District; (3) Defendants' property may be found in the District; and (4) there is no statutory or maritime bar to attachment.  *See Zambrano*, 2017 WL 347078, at *2 (citation omitted).

Plaintiff readily satisfies the first, second, and fourth requirements — none of which Defendants challenge.  (*See* Resp. 8–9; *see also generally* Mot.; Reply).  Plaintiff's negligence claims are cognizable in admiralty.  *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 324 (3d Cir. 2003) (citation omitted); (*see also generally* Compl.).  Defendants cannot be found in this District, as they are Italian entities that operate exclusively in Italy.  (*See* Compl. ¶¶ 7–8, 25, 31; *see also* Mot. 3).  And no statutory or maritime bar to attachment applies, because Plaintiff brought his claims within the three-year statutory limitation period for maritime torts.  *See* 46 U.S.C. § 30106; (Compl. ¶¶ 11–12, 14 (alleging that Plaintiff's injury occurred on August 17, 2023)).

Whether Defendants' property may be found in this District requires more analysis. Garnishees assert the funds cannot be found here because they are not physically in Florida — they are in bank accounts in the United Kingdom and will be wired to Aloschi in Italy.  (*See* Mot. 3, 6–8; Reply 5–7).  Plaintiff insists the location requirement is satisfied because Garnishees constructively possess the funds in the Southern District of Florida.  (*See* Resp. 9–14).  The Court agrees that Garnishees' constructive possession in this District suffices.

To begin, Florida law informs the question of the funds' location.  "[W]hen neither [federal] statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law."  *Coastal Fuels Mktg., Inc. v. Fla. Exp. Shipping Co., Inc.*, 207 F.3d 1247, 1251 (11th Cir. 2000) (alterations added; collecting cases)).

Plaintiff contends "there is a maritime rule on point . . . [and] the Court cannot turn to state law to supplement [this] well established maritime precedent." (Resp. 13 (alterations added; footnote call number and citation omitted). Not so. The "well established precedent" Plaintiff cites is a 2010 district court case. (*See id.* 13 (citing *Johnson v. Luzon Strait Schiffahrtsgellschaft MBH & Co.*, No. 10-22909-Civ, 2010 WL 11553595, at *4 (S.D. Fla. Oct. 21, 2010))). This singular decision hardly forecloses application of state law. *See Reibor Int'l Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*, 759 F.2d 262, 266 (2d Cir. 1985) (turning to state law where federal admiralty law was "thin"). Indeed, other courts apply state law in assessing the location of property under Rule B, as federal maritime precedent on the issue is lacking. *See, e.g.*, *Ultra Deep Picasso Pte. Ltd. v. Dynamic Indus. Saudi Arabia Ltd.*, 119 F.4th 437, 443 (5th Cir. 2024) (applying Texas law to discern the location of a bank account); *Allied Mar., Inc. v. Descatrade SA*, 620 F.3d 70, 74 (2d Cir. 2010) (applying New York law to determine the location of a bank (citations omitted)). So too here.

In any event, *Johnson* is consistent with Florida law. Relevant legal authorities support the conclusion that because Garnishees constructively possess the funds from within this District, the funds are located here.

In *Johnson*, the district court found a garnishee constructively possessed electronic funds within the Southern District of Florida — satisfying Rule B's location requirement — despite the funds arguably being held in a bank account in New York. *See* 2010 WL 11553595, at *4 ("[Garnishee's] presence in this District and its ownership and control of the funds at the very least put[] it in constructive possession of the funds in this District" (alterations added; citation omitted)). As the court reasoned, while "[t]he situation might be different if [the plaintiff] had attempted to garnish, for example, an intermediary bank[,]" the plaintiff had garnished "the entity

with the *power to draw on the funds*," — so it was appropriate under Rule B to treat the funds as if they were located in the same district as the entity.  *Id.* (alterations and emphasis added; footnote call number and citation omitted).

Likewise, Florida caselaw discussing intangible property suggests that electronic funds are located where they are constructively possessed.  *See, e.g.*, *Henderson v. Usher*, 160 So. 9, 11 (Fla. 1935) (reasoning that intangible property generally travels with the owner and observing that "[w]hen questions of jurisdiction are involved, . . . the constructive situs [of intangibles] is ample to give jurisdiction of them to the courts of the state where they are constructively located." (alterations added)); *Bush v. State ex rel. Dade Cnty.*, 191 So. 515, 524 (Fla. 1939) ("The situs of invisible and intangible property, not growing out of real estate, is with the owner." (citation and quotation marks omitted)); *Dep't of Revenue v. Amrep Corp.*, 358 So. 2d 1343, 1349–50 (Fla. 1978) ("[T]he situs of movable property such as intangibles for purposes of ad valorem taxation is the domicile of the owner[.]" (alterations added; citation omitted)); *Cockrell v. Lewis*, 389 So. 2d 307, 308 (Fla. 5th DCA 1980) ("The situs of intangible personal property depends on the domicile of the owner of the property."); *Rosenberg v. U.S. Bank*, 360 So. 3d 795, 804 (Fla. 3d DCA 2023) ("Intangible personal property normally is understood to include funds." (citation and footnote call number omitted)).

Yet Garnishees argue that caselaw interpreting Florida's garnishment statute, Florida Statutes section 77.01 *et seq.*, supports their argument that the attached funds are located outside of Florida.  (*See* Mot. 7–8; Reply 6–7 (citing *Power Rental Op Co, LLC v. Virgin Islands Water & Power Auth.*, No. 20-cv-1015, 2021 WL 9881137, at *1–9 (M.D. Fla. July 6, 2021); *Skulas v. Loiselle*, No. 09-60096-Civ, 2010 WL 1790439, at *3 (S.D. Fla. Apr. 9, 2010), *report and recommendation adopted*, No. 09-60096-Civ, 2010 WL 1790433 (S.D. Fla. May 5, 2010))).  In

*Power Rental*, a court concluded the Florida garnishment statute "does not apply extraterritorially to out-of-state bank accounts" based on a review of Florida decisions interpreting the statute. 2021 WL 9881137, at *8 (footnote call number and citations omitted).  Similarly, in *Skulas*, a court found it lacked jurisdiction to order post-judgment garnishment of a defendant's out-of-state bank account.  *See* 2010 WL 1790439, at *1–3.

These cases are inapt.  First, they involve distinguishable facts: the garnishees were banks, so constructive possession was not at issue.  *See Power Rental*, 2021 WL 9881137, at *8; *Skulas*, 2010 WL 1790439, at *1–2.  Second, more recent case law from the Florida Supreme Court abrogates such cases by clarifying that a trial court *can* order a defendant over whom it has personal jurisdiction to act on property located outside of Florida.  *See Shim v. Buechel*, 339 So. 3d 315, 316–18 (Fla. 2022) (citations omitted).[4]

Garnishees also cite *Allied Maritime*, where the Second Circuit held that under New York law, funds held by a garnishee bank in its Paris branch were located only in Paris — despite the bank's New York branches and the possibility the funds had been temporarily transferred to a New York account to comply with a court order.  (*See* Mot. 6–7 (citing *Allied Mar., Inc. v. Descatrade SA*, 620 F.3d 70, 72 (2d Cir. 2010)); *see also id.* at 73–75).  This case, too, is unhelpful.  *Allied Maritime* turned on application of New York law.  *See* 620 F.3d at 74–76 (discussing New York's "separate entity rule" — which treats each branch of a bank as separate for attachment purposes — and a state-law rule that funds electronically transferred by a bank do not become the property

---

[4] Moreover, to the extent these cases involved considerations unique to Florida's garnishment statute, they do not speak directly to the issue of the location of electronic funds under Rule B.  *See Power Rental*, 2021 WL 9881137, at *3 (emphasizing that "garnishment is a creature of statute" and cannot extend "beyond the provisions of the statute which must be strictly followed" (alteration adopted; citations and quotation marks omitted)); *Skulas*, 2010 WL 1790439, at *2 ("The issue here is whether, under Florida's garnishment statute, a judgment creditor can garnish a bank account maintained outside of Florida.").

of the beneficiary until the transfer "is completed by acceptance of a payment order by the beneficiary's bank" (alteration adopted; quotation marks and citation omitted).[5]  It also involved distinguishable facts: as in *Power Rental* and *Skulas*, the garnishees were banks.  *See Allied Mar.*, 620 F.3d at 73.

Here, in contrast, Garnishees are the nominal owners of the funds in the accounts, and the entities with control over — and constructive possession of — the funds.  *See Henderson v. United States*, 575 U.S. 622, 626 (2015) (citation omitted).  Plaintiff has thus shown the funds are in the Southern District of Florida for Rule B purposes, and there were reasonable grounds for issuing the Attachments.  *See Dannebrog Rederi AS*, 146 F. Supp. 2d at 1311 (citation omitted).

### C. Equitable Vacatur

Garnishees assert that equitable vacatur is warranted because Italy or California would be more appropriate forums for this dispute than this District.  (*See* Mot. 10–13; Reply 7–8).  Plaintiff contests vacatur, arguing that he cannot secure full relief in California and litigating in Italy would be inconvenient.  (*See* Resp. 17–19).

Garnishees rely on *Zambrano*, where a court vacated an attachment after finding that the parties were Venezuelan citizens and residents, and the events giving rise to the dispute occurred in Venezuela.  (*See* Mot. 10–12 (citing 2017 WL 347078, at *5)).  As Plaintiff notes (*see* Resp. 17–18), his case involves a materially different situation.  Plaintiff is a U.S. citizen who resides in

---

[5] Garnishees do not identify any analogous Florida laws.  (*See generally* Mot.).  In any event, the Separate Entity Rule does not appear to be settled law in Florida.  *Compare, e.g., Tribie v. United Dev. Grp. Int'l LLC*, No. 07-22135-Civ, 2008 WL 5120769, at *3 (S.D. Fla. Dec. 2, 2008) (stating that the Separate Entity Rule is a "somewhat dated and seldom-cited legal doctrine" that "*is not* the law in Florida" (emphasis in original; citation omitted)) *with Trafigura Trading LLC v. Virgin Islands Power & Water Auth.*, No. 23-mc-61480, 2025 WL 1739788, at *4 (S.D. Fla. June 16, 2025) (cautioning against the idea that a bank account should be "considered located everywhere that the bank maintains a branch" in assessing jurisdiction to issue a writ under Florida's garnishment statute (citation omitted)).

Illinois (*see* Compl. ¶ 5) — so, unlike in *Zambrano*, the parties are not all "present in the same jurisdiction[.]"  2017 WL 347078, at *5 (alteration added).  Certainly, as Garnishees point out, "Plaintiff cannot point to . . . binding law holding that all parties must be in the same jurisdiction for a district court to exercise its equitable powers to vacate an attachment."  (Reply 8 (alteration added)).  But Plaintiff does not have the burden to show why vacatur is not warranted; the burden is on the Rule E movant.  *See Zambrano*, 2017 WL 347078, at *2 (citation omitted).  Garnishees fail to meet that burden.[6]

Garnishees insist that Italy offers an adequate remedy for Plaintiff and the case would be far easier to litigate there due to the location of relevant evidence and witnesses.[7]  (Mot. 11; *see also id.* 12).  Naturally, Plaintiff disagrees — he chose to litigate in the United States because he resides here and believes litigating in Italy would be inconvenient and unfair.  (*See* Resp. 16–17).  Regardless of whether Plaintiff would have an easier or harder time prosecuting his case in Italy, Garnishees supply no convincing reason why Plaintiff's choice to litigate here is *inequitable*.

In the alternative, Garnishees ask the Court to vacate the Attachments because the dispute "should be heard in the "[Central] District of California[,]" where Plaintiff filed the first lawsuit.  (Mot. 12 (alterations added); *see also id.* 13).  "There is no compelling reason for parallel

---

[6] In fact, caselaw discussing equitable vacatur typically states that the *defendant*, as the Rule E movant, bears the burden of establishing grounds for equitable vacatur.  *See, e.g.*, *Zambrano*, 2017 WL 347078, at *2 (citation omitted).  Further, recognized grounds for vacatur turn on considerations specific to the defendant and plaintiff — not garnishees.  *See id.*; *Aqua Stoli Shipping Ltd.*, 460 F.3d at 444–45.  To the extent Garnishees have standing to make an equitable argument for vacatur, they fail to do so.

[7] Garnishees also note that "Aloschi contends Plaintiff explicitly agreed to designating Italy as the exclusive jurisdiction for any legal proceedings arising from the subject excursion."  (Mot. 11–12 (citing Aloschi's Resp. to Pl.'s Mot. to Reopen the Case [ECF No. 28] ¶ 8)).  The Court will be addressing that argument — which would not establish a recognized ground for equitable vacatur even if proven, *see Zambrano*, 2017 WL 347078, at *2 (citation omitted) — when Aloschi or SNAV raises it in the forthcoming motion to dismiss.

litigation," Garnishees argue, "and the interests of justice strongly favor honoring the first-filed case." (*Id.* 13).

But there *is* a compelling reason for parallel litigation. Princess, the only garnishee in the California action, states it owes only 86,087.48 Euros (+/- USD $94,696.22) to Aloschi, *see Buesking*, No. 24-cv-04935, Mot. to Quash . . . [ECF No. 83-1] 2 n.2, filed Dec. 17, 2024 — which Plaintiff asserts is not sufficient compensation for his catastrophic spinal-cord injury (*see* Compl. ¶ 27 (seeking over $1,000,000 in damages)).[8] "Full compensation has long been recognized as a basic principle of admiralty law[.]" *Probo II London v. Isla Santay MV*, 92 F.3d 361, 363 (5th Cir. 1996) (alteration added). And while the first-filed rule often applies to parallel litigation, it "'is not intended to be rigid, mechanical, or inflexible,' but is to be applied in a manner best serving the interest of justice." *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990) (citation omitted). The interests of justice do not require vacatur.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Garnishees, Carnival Corporation, Royal Caribbean Cruises Ltd., and Celebrity Cruises, Inc.'s Motion to Vacate Plaintiff's Rule B Attachments and Garnishments **[ECF No. 48]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 5th day of August, 2025.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[8] Plaintiff's ability to recover even this amount if he prevails on his negligence claims is uncertain, as Princess contends the funds are not subject to garnishment and its motion to quash the attachment remains pending. *See Buesking*, No. 24-cv-04935, Mot. to Quash . . . 4–6.