UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-20454-CIV-ALTONAGA

**DARYEL BUESKING**,

    Plaintiff,
v.

**ALOSCHI BROS. SRL**, *et al.*,

    Defendants.
_____/

**DARYEL BUESKING**,

v.
    Garnisher,

**CARNIVAL CORPORATION**, *et al.*,

    Garnishees.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Aloschi Bros. SRL ("Aloschi") and SNAV S.P.A.'s ("SNAV['s]") Motion to Dismiss [ECF No. 84], filed on August 8, 2025. Plaintiff, Daryel Buesking filed a Response [ECF No. 85]; to which Defendants filed a Reply [ECF No. 90]. The Court has considered the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part.

### I. BACKGROUND

Plaintiff was a passenger on the cruise ship, *Enchanted Princess*, operated by non-party, Princess Cruise Lines ("Princess"). (*See* Compl. [ECF No. 1] ¶¶ 9, 13). Princess sold Plaintiff an excursion from Naples, Italy to the island of Capri. (*See id.* ¶ 13). Defendants are two Italian companies that each operated the excursion. (*See id.* ¶¶ 8–9, 16, 20).

The excursion, which took place on August 17, 2023, involved taking a jetfoil or ferry across a navigable body of water. (*See id*. ¶ 14). Plaintiff asserts the ferry was "unreasonably overcrowded" and Defendants directed hundreds of passengers to board the jetfoil at the same time — leading to a chaotic boarding process that made it difficult to identify hazards on the vessel. (*Id.* ¶ 18). As a result of the overcrowding, Plaintiff allegedly tripped over an unmarked obstacle, fell into a row of seats, and sustained a catastrophic spinal cord injury. (*See id*. ¶¶ 14, 17, 19).

Plaintiff initiated this lawsuit on January 30, 2025, invoking *quasi in rem* jurisdiction under Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Admiralty Rules"). He brings four claims for relief against Defendants: two seeking *quasi in rem* attachments and garnishments under Admiralty Rule B (Counts I–II) (*see* Compl. ¶¶ 22–33); a negligence claim (Count III) (*see id.* ¶¶ 34–37); and a negligent-failure-to-warn claim (Count IV) (*see id.* ¶¶ 38–42). On March 14, 2025, Plaintiff served Summonses and Processes of Maritime Attachment and Garnishment ("Attachments") [ECF Nos. 8–9] on Garnishees, Carnival Corporation; Royal Caribbean Cruises Ltd.; and Celebrity Cruises, Inc. (*See generally* Process Receipts and Returns [ECF Nos. 21, 33–34]).

Defendants seek dismissal of the Complaint and vacatur of the Attachments, arguing (1) the Court lacks subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); (2) the Court lacks personal jurisdiction because Defendants lack minimum contacts with Florida, and the Attachments are invalid; (3) dismissal is warranted under the doctrines of *forum non conveniens* and international comity; and (4) Plaintiff fails to state a claim against Aloschi under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Mot.).[1]

---

[1] Defendants also argued that a forum selection clause in the ferry ticket applies, and venue is improper under 28 U.S.C. section 1391(b). (*See* Mot. 14–17). They withdrew these arguments in the Reply. (*See* Reply 6–7). In their Reply, Defendants raised the additional argument that venue is improper because the Court lacks personal jurisdiction over them. (*See* Reply 7). As this argument was raised for the first time

2

## II. DISCUSSION

### A. Subject-Matter Jurisdiction

In the Complaint, Plaintiff invokes the Court's admiralty jurisdiction under 28 U.S.C. section 1333, asserting that the dispute involves a "maritime tort that occurred on a vessel in navigable waters" and a "maritime contract for carriage." (Compl. ¶ 3).[2] Defendants contend the Court lacks admiralty jurisdiction because the incident occurred in Italy, while Plaintiff was aboard an Italian ferry flying the Italian flag. (*See* Mot. 10–13).[3]

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a defendant moves to dismiss for lack of subject-matter jurisdiction, the plaintiff, as the party invoking the authority of a federal court to seek relief, bears the burden of establishing jurisdiction. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

A motion to dismiss under Rule 12(b)(1) may present a facial or a factual attack to subject-matter jurisdiction. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Facial attacks to subject-matter jurisdiction require the court merely to assess whether the plaintiff has sufficiently alleged a basis for jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted). Such is the case here. When analyzing

---

in the Reply, the Court does not address it. *See, e.g.*, *Clear Spring Prop. & Cas. Co. v. Bluewater Adventures of Sarasota*, No. 22-cv-60554, 2022 WL 18027821, at *9 n.12 (S.D. Fla. Dec. 6, 2022) (citation omitted).

[2] Plaintiff also asserts the Court has diversity jurisdiction. (*See* Compl. ¶ 3). Because a Rule B attachment "is a remedy available only under a court's admiralty jurisdiction[,]" *Alphamate Commodity GMBH v. CHS Eur. SA*, 627 F.3d 183, 186 (5th Cir. 2010) (alteration added; citations omitted), the Court only evaluates whether admiralty jurisdiction exists.

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

a facial attack to subject-matter jurisdiction, a court "must consider the allegations of the complaint to be true." *Id.* (citation omitted).

A party seeking to invoke federal admiralty jurisdiction over a tort claim "must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The location requirement is satisfied if the tort occurred on navigable waters. *See id.* (citation omitted). The connection requirement is satisfied if the "general features of the type of accident involved" indicate the "incident has a potentially disruptive impact on maritime commerce" and "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Minott v. M/Y Brunello*, 891 F.3d 1277, 1282 (11th Cir. 2018) (citations and quotation marks omitted). Plaintiff adequately alleges location and connection with maritime activity.

Regarding location, Plaintiff states the incident occurred on navigable waters. (*See* Compl. ¶ 14). Defendants contend this allegation does not satisfy the location requirement because admiralty jurisdiction does not extend to torts in territorial waters of other nations. (*See* Mot. 11–12 (citing *Dunham v. Hotelera Canco S.A. de C.V.*, 933 F. Supp. 543, 547 (E.D. Va. 1996); *St. Pierre v. Maingot*, No. Civ.A.01-2281, 2002 WL 31655355, at *3 (E.D. La. Nov. 21, 2002); other citations omitted)). Defendants also argue that the Eleventh Circuit has cautioned against extending admiralty jurisdiction to foreign waters. (*See* Mot. 12 (citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir. 2004))). The Court is not persuaded.

First, Defendants misread *Doe*. (*See* Mot. 12); *Doe*, 394 F.3d at 900–01. There, the Eleventh Circuit determined a tortious act on *land* in Bermuda satisfied the location requirement. *See Doe*, 394 F.3d at 900–01. The court took as a given that admiralty jurisdiction extends to foreign waters — and reasoned that based on the Supreme Court's "expansive view" of admiralty

4

jurisdiction, an adequate nexus existed between the docked ship and the incident. *See id.* (citing *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25 (2004); other citation omitted). Consistent with that approach, "the majority of courts that have addressed the issue have determined that no [territorial] restriction applies." *Campbell v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 07-61744-Civ, 2008 WL 4609986, at *3 (S.D. Fla. Oct. 14, 2008) (alteration added; collecting cases); *see also Girmay v. M/Y Ealu*, No. 25-cv-60661, 2025 WL 1859445, at *3 (S.D. Fla. July 7, 2025). Defendants provide no reason to depart from that prevailing view. (*See generally* Mot.).

Because Plaintiff alleges his injury occurred on board the ferry and due to Defendants' negligence, he also satisfies the connection requirement, which Defendants do not contest. (*See* Compl. ¶¶ 17–21; *see generally* Mot.; Reply); *see also, e.g.*, *Santos v. Am. Cruise Ferries, Inc.*, 100 F. Supp. 3d 96, 103 (D.P.R. 2015) (explaining "an injury aboard a vessel engaged in the commercial transportation of passengers . . . bears a significant relation to traditional maritime activities and has an effect on maritime commerce" (alteration added; citations omitted)); *Goodwin v. Rios Tropicales, S.A.*, No. 04-22707-Civ, 2005 WL 8149246, at *10 (S.D. Fla. Nov. 18, 2005) ("The duties owed by vessel owners to their passengers have long been found a traditional maritime concern." (citation omitted)), *report and recommendation adopted*, 2006 WL 8426843 (S.D. Fla. Feb. 28, 2006).

## B. Personal Jurisdiction and Vacatur of Attachments

Defendants next challenge personal jurisdiction and the adequacy of the Attachments.

Defendants argue the Court lacks personal jurisdiction over them because they have no minimum contacts with Florida. (*See* Mot. 13 (citations omitted)). Plaintiff contends minimum contacts are unnecessary because the Attachments confer *quasi in rem* jurisdiction over Defendants. (*See id.* 3). While Plaintiff is correct that Rule B attachments satisfy jurisdiction, the

5

parties' briefing confirms the Attachments are defective as to SNAV (*see* Resp. 4; Reply 3–4) — which leaves the Court without jurisdiction over that Defendant.

As Plaintiff notes, the Court need not undertake a jurisdictional analysis based on minimum contacts when *quasi in rem* jurisdiction exists. (*See* Resp. 4 (citations omitted)). A Rule B attachment "is a *quasi in rem* proceeding against a party who is not personally present in the district but whose property is present." *World Wide Supply OU v. Quail Cruises Ship Mgmt.*, 802 F.3d 1255, 1260–61 (11th Cir. 2015). In the Rule B context, "a good-faith allegation in the complaint" that the defendant's property is present within the district "is *the* jurisdictional fact" that gives the court personal jurisdiction over the defendant. *Id.* (quotation marks omitted; quoting *Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159 (5th Cir.1992) (alteration added)).

Plaintiff states that Defendants' property is present within this District. (*See* Compl. ¶¶ 26, 32; *id.*, Ex. 1, [Affidavit] in Support of Rule B Claim [ECF No. 1-1] ¶ 5; *see also generally* Aug. 5, 2025 Order [ECF No. 83] (denying Garnishees' Motion to Vacate the Attachments [ECF No. 48] and concluding the attached property was present in the District)). Given this allegation, and because Defendants do not challenge the validity of the Attachments as to Aloschi (*see generally* Mot.; Reply), the Court has jurisdiction over Aloschi, *see World Wide Supply*, 802 F.3d at 1260–61 (citation omitted).

By contrast, Defendants contest the validity of the Attachments as to SNAV. (*See* Mot. 3, 9–10). They submit an affidavit from SNAV's representative affirming it did not have property in this District when the Attachments issued — and note that Garnishees represent they have never held SNAV's property in the District. (*See id.*, Ex. 1, Franco Rizzi Aff. [ECF No. 84-1]; Reply 4–5); *see also* Admiralty Rule E(4)(f) (providing that "any person claiming an interest in" attached property can challenge the validity of an attachment at an evidentiary hearing); *Dannebrog Rederi*

*AS v. M/Y True Dream*, 146 F. Supp. 2d 1307, 1311 (S.D. Fla. 2001) (explaining that in a challenge to an attachment, the plaintiff must show reasonable grounds for issuing the attachments based on the facts known at the time of attachment (citation omitted)). Plaintiff does not argue that SNAV had property in this District. (*See* Resp. 4–5; *see also* Reply 3–4). Consequently, the Attachments are invalid as to SNAV. *See Zambrano v. Vivir Seguros, C.A.*, No. 16-cv-22707, 2017 WL 347078, at *2 (S.D. Fla. Jan. 24, 2017) (explaining that vacatur is warranted if a defendant's property is not found within the district (citation omitted)).

Without an effective Rule B attachment of SNAV's property, the Court can only exercise jurisdiction over SNAV if it has minimum contacts with Florida sufficient to satisfy the requirements of due process. *See, e.g.*, *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990) (citations and footnote call number omitted). Because Plaintiff makes no showing that SNAV has such contacts (*see generally* Resp.), SNAV is dismissed.[4]

### C. *Forum Non Conveniens* **and International Comity**

Aloschi makes two arguments that the case should be heard in Italy. (*See* Mot. 17–23). It invokes the doctrine of *forum non conveniens*, arguing that Italy is an adequate and available forum; all relevant evidence, and most witnesses are located there; and Italy has an interest in "adjudicating disputes involving its domestic maritime transportation industry[.]" (*Id.* 22–23 (alteration added); *see also id.* 19–21). Aloschi also asserts that the doctrine of international comity justifies dismissal because Italy has "primary responsibility for investigating maritime incidents in Italian waters," and proceeding with the case risks creating conflict between American and Italian legal standards. (*Id.* 23; *see also id.* 24).

---

[4] Given this conclusion, the Court discusses Defendants' remaining arguments only in relation to Aloschi.

***Forum Non Conveniens.*** *Forum non conveniens* "permits a court to decline jurisdiction" over a case when there is a "more convenient forum for the case to be litigated." *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1303 n.4 (11th Cir. 2002) (citations omitted). A defendant invoking the doctrine bears the burden of establishing, among other requirements, that an adequate alternative forum is available. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001) (citation omitted). An alternative forum is available "when the foreign court can assert jurisdiction over the litigation sought to be transferred"; and it is adequate "so long as it 'offers at least some relief.'" *Casa Besilu LLC v. Fed. Ins. Co.*, No. 20-24766-Civ, 2021 WL 1617107, at *8 (S.D. Fla. Apr. 26, 2021) (quoting *Leon*, 251 F.3d at 1311). A strong presumption applies in favor of the plaintiff's initial forum choice, particularly when the plaintiff is a U.S. citizen and the defendant argues the alternative forum is a foreign country. *See generally SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004).

Plaintiff contends Italy is an inadequate forum because his negligence claims would be time-barred under Italian law. (*See* Resp. 13). The law is clear that "an adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum." *Bank of Credit & Com. Int'l (Overseas) Ltd. v. State Bank of Pak.*, 273 F.3d 241, 246 (2d Cir. 2001) (citations omitted); *see also Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 202 (4th Cir. 2009); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1235 (9th Cir. 2011). Because Italy would not offer Plaintiff any relief, Aloschi's *forum non conveniens* argument fails.

***International Comity.*** International comity is "an abstention doctrine that reflects the extent to which the law of one nation . . . shall be allowed to operate within the dominion of another nation." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1030 (11th Cir. 2014) (alteration added; quotation marks and citation omitted). Comity is "not a rule of law, but one of

8

practice, convenience, and expediency; it "does not achieve the force of an imperative or obligation." *Id.* (citation and quotation marks omitted). "Whether to grant comity is soundly within the Court's discretion." *Sec. & Exch. Comm'n v. TCA Fund Mgmt. Grp. Corp.*, No. 20-21964-Civ, 2022 WL 3334488, at *8 (S.D. Fla. Aug. 4, 2022) (citations omitted).

Comity is most often applied retrospectively, "when courts consider whether to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings." *GDG Acquisitions, LLC*, 749 F.3d at 1030 (citation omitted). "Far more rarely, courts have applied international comity prospectively," by dismissing or staying domestic actions based on the "interests of our government, the foreign government, and the international community in resolving the dispute in a foreign forum." *Id.* (citation and quotation marks omitted). Prospective comity is reserved for "exceptional diplomatic circumstances." *Id.* at 1026 (citation omitted). For example, in *Ungaro-Benages v. Dresdner Bank AG*, the Eleventh Circuit upheld a dismissal based on prospective comity in a case involving "extensive negotiations" between President Clinton and the German government, noting that the United States "consistently supported the [foreign forum] as the exclusive forum[.]" 379 F.3d 1227, 1240 (11th Cir. 2004) (alterations added; citations omitted).

Aloschi asks the Court to apply prospective international comity. (*See* Mot. 23–24). But unlike in *Ungaro-Benages*, the United States has no significant interest in using a foreign forum to adjudicate this dispute. Rather, "[t]he United States has a strong interest in ensuring that Plaintiff, a U.S. citizen, is able to pursue [his] claims in the United States." *CAE USA, Inc. v. XL Ins. Co. Ltd.*, No. 11-cv-64, 2011 WL 1878160, at *8 (M.D. Fla. May 17, 2011) (alterations added; citation omitted). Moreover, "[n]o statement of foreign policy interest from the United States appears in the current record, and [the Court] can discern no such interest favoring the foreign adjudication of this matter." *GDG Acquisitions, LLC*, 749 F.3d at 1032 (alterations added). In

9

short, Aloschi has failed to meet the high threshold required to obtain relief based on prospective international comity.

### D. Failure to State a Claim

Finally, Aloschi argues that Plaintiff fails to state a negligence claim. (*See* Mot. 26–27).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,'" it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court construes the complaint "in a light most favorable to the plaintiff" and takes its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

To plead negligence, a plaintiff must allege that the defendant owed a duty and breached it. *See, e.g.*, *Lake Car Connection, Inc. v. Truist Bank*, No. 25-cv-292, 2025 WL 1906665, at *1 (M.D. Fla. July 10, 2025).[5] And when a claim rests on a defendant's failure to remedy a dangerous condition, a plaintiff generally must also allege facts supporting an inference that the defendant had actual or constructive notice of the condition. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir.1989). Aloschi contends that Plaintiff has not adequately alleged duty, breach, or notice. (*See* Mot. 26–27). Here, again, Aloschi's arguments lack merit.

As to duty, Aloschi argues it owed Plaintiff none, as it was merely a "tour guide" and "ticket reseller" that purchased ferry tickets from SNAV and supplied them to Princess's passengers. (Mot. 27 (alteration added)). Aloschi supplies no authority suggesting that acting as a tour guide and ticket reseller cannot give rise to a duty to tour participants. (*See generally* Mot.; Reply). In any event, Plaintiff alleges that Aloschi "co-controlled, co-operated and/or co-managed the operations of the subject tour" with SNAV. (Compl. ¶ 20). Certainly, a ship operator owes a duty of reasonable care to passengers. *See, e.g.*, *Williams v. MSC Cruises*, S.A., No. 23-22340-Civ, 2024 WL 81346, at *3 (S.D. Fla. Jan. 8, 2024).

Regarding breach, Plaintiff alleges that Aloschi failed to inspect the jetfoil for trip hazards, warn of the tripping hazard, limit participation in the tour to prevent overcrowding, and coordinate the boarding process in a safe manner given the crowded conditions. (*See* Compl. ¶¶ 17–19, 36,

---

[5] Florida common law applies to Plaintiff's tort claim against Aloschi. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) ("In analyzing a maritime tort case, we rely on general principles of negligence law." (citation and footnote call number omitted)); *see also Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2d Cir. 2004) ("[F]ederal maritime law incorporates common law negligence principles generally, and [state] law in particular." (alterations added; citations omitted)); *Warrington Marine, Inc. v. Frankel*, No. 04-61312-Civ, 2005 WL 8155335, at *1 n.1 (S.D. Fla. July 15, 2005) ("In the absence of a controlling federal admiralty principle, state law is applied in an admiralty case." (citations omitted)).

41). These allegations are sufficient. *See, e.g.*, *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1320 (S.D. Fla. 2015).

That leaves notice. Aloschi insists that Plaintiff's allegations do not support actual or constructive notice because it did not own the jetfoil, "did not manage passenger manifests, did not oversee crowding aboard the ferry, and had no authority to alter vessel operations." (Reply 12). Once again, these assertions contradict the allegation in the Complaint that Aloschi operated the jetfoil. (*See* Compl. ¶ 20).

Plaintiff also alleges Aloschi created the dangerous condition that caused his accident by instructing "hundreds of passengers" to "board the ferry at the same time," which led to an "unreasonably chaotic boarding process aboard the ferry and made it difficult to identify hazards aboard the vessel" — including the unmarked obstacle he tripped over. (*Id.* ¶ 18; *see also id.* ¶¶ 17, 19). Because the Complaint supports a reasonable inference that Aloschi created an unsafe or foreseeably hazardous condition, no allegation of notice is necessary. *See McLean v. Carnival Corp.*, No. 12-24295-Civ, 2013 WL 1024257, at *4 (S.D. Fla. Mar. 14, 2013) (concluding no allegation of notice was necessary when a plaintiff alleged a cruise line's disembarkation procedures created an unsafe or foreseeably hazardous condition); *see also Geyer v. NCL (Bahamas) Ltd.*, 204 F. Supp. 3d 1354, 1357 (S.D. Fla. 2016) (explaining a plaintiff did not need to prove notice at summary judgment when he maintained the defendant created the dangerous condition that caused injury by allowing unsupervised children to run and slide at an aqua park).

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants, Aloschi Bros. SRL., and SNAV S.P.A.'s Joint Motion to Dismiss **[ECF No. 84]** is **GRANTED in part**. SNAV S.P.A. is dismissed. Count II — for Quasi in Rem

CASE NO. 25-20454-CIV-ALTONAGA

"Maritime Rule B" Attachment and Garnishment against SNAV S.P.A. — is dismissed.

2. The Summonses and Processes of Maritime Attachment and Garnishment **[ECF No. 9]** issued against SNAV S.P.A. are **SET ASIDE**.

**DONE AND ORDERED** in Miami, Florida, this 6th day of October, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record